**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**WEST VIRGINIA HIGHLANDS
CONSERVANCY, OHIO VALLEY
ENVIRONMENTAL COALITION,
and SIERRA CLUB,**

**Plaintiffs,**

                                                       **CIVIL ACTION NO.** 2:13-14877

**v.**

**POCAHONTAS LAND CORPORATION,**

**Defendant.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

### INTRODUCTION

1.    This citizen suit is an action for declaratory judgment, mandatory injunctive relief, and civil penalties against Defendant Pocahontas Land Corporation ("Pocahontas") for discharging pollutants in violation of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA") from an unpermitted point source of pollution on its property west of Baisden in Mingo County, West Virginia. That point source discharges into Bear Fork of Ben Creek of Tug Fork, which are waters of the United States.

2.    As detailed below, Plaintiffs allege that the Defendant, as owner of the point source, discharged and continues to discharge selenium (a pollutant designated as toxic by the U.S. Environmental Protection Agency, 40 C.F.R. § 401.15) into waters of the United States without a National Pollution Discharge Elimination System ("NPDES") Permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, in persistent violation of Section 301

of the Clean Water Act, 33 U.S.C. § 1311.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (Clean Water Act citizen suit provision).

4.      On March 18, 2013, Plaintiffs gave notice of the violations and their intent to file suit to the Defendant, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5.      More than sixty days have passed since notice was served and no state or federal government agency has commenced and diligently prosecuted a civil or criminal action to redress the violations.

6.      Moreover, neither EPA nor the WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or comparable state law to redress the violations prior to the issuance of the March 18, 2013 notice letter.

7.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District.

## PARTIES

8.      Defendant Pocahontas is a Virginia corporation that owns property where the violations complained of in this action have occurred and are occurring.

9.      Pocahontas is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

10.     At all relevant times, Pocahontas is and has been the owner of a certain tract or parcel of land on Right Fork of Ben Creek, a tributary of the Tug Fork of the Big Sandy River, in

Mingo County, West Virginia, containing 150 acres, more or less, and on which at least one valley fill was constructed during the operation of the Southeast Ridge No. 1 Surface Mine.

11.     Plaintiff Ohio Valley Environmental Coalition (hereinafter "OVEC") is a nonprofit organization incorporated in Ohio.  Its principal place of business is in Huntington, West Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach.  OVEC has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

12.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

13.     Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a nonprofit organization incorporated in West Virginia.  It has approximately 1,700 members.  It works for the conservation and wise management of West Virginia's natural resources.

14.     Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharges of pollutants. Plaintiffs' members fish, swim, observe wildlife, or otherwise use the waters affected by Defendant's

discharges and are harmed by the pollutants that Defendant is discharging. Plaintiffs' members refrain from swimming, wading, fishing, and/or engaging in other activities in and around the streams affected by Defendant's discharges to avoid exposure to pollutants. Plaintiffs' members are also very concerned about the impacts of pollution from Defendant's discharges on their friends and neighbors and on local wildlife. If Defendant's unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the limits in Defendant's permits.

15.     At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

16.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

18.     At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of West Virginia.  Permits issued under this program are known as

"WV/NPDES" permits.

19.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

20.     Section 505(f)(1) of the CWA defines "an effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA

21.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

22.     Section 309(d), 33 U.S.C. § 1319(d), provides that any person who violates Section 301, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

23.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009. See 40 C.F.R. § 19.4.

24.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

### *Valley Fills*

25.     Valley fills, also known as durable rock fills or hollow fills, are a common feature of Appalachian surface mining.

26.     Valley fills are a result of the expansion of rock that occurs when mountains are blown up.  Excess rock and soil are placed in nearby valleys, covering headwater streams and forming valley fills.

27.     Valley fills are engineered structures.  They are designed with a rock core underdrain, to direct water under the fill.  They also sometimes have drainage ditches along the sides of the fill or down the center surface.  The water percolating through the fill and draining along the sides and center are discharged at the toe of the fill as surface water.

28.     Precipitation and groundwater percolate through overburden on the mine site and valley fill, dissolving minerals in the rock, such that the water discharged out the toe of the fill may include additional pollutants.

29.     Defendant took ownership of a tract or parcel of land on the Right Fork of Ben Creek, a tributary of the Tug Fork of the Big Sandy River, in Mingo County, West Virginia, under a deed from Royal Land Company to Pocahontas dated December 5, 1986.

30.     On or about June 19, 1989, WVDEP first issued Surface Mining Permit No. S501689 to Mingo Logan Coal Company for the operation of the Southeast Ridge Mine on lands including the parcel described above.

31.     During the course of its operation of the Southeast Ridge Mine, Mingo Logan Coal Company constructed Durable Rock Fill No. 4 in Bear Fork of Ben Creek of Tug Fork, as authorized by SMA Permit S501689.  Durable Rock Fill No. 4 is located on a 150 acre parcel

owned by Defendant.

32.     Durable Rock Fill No. 4 was constructed in the stream and was engineered to convey water through a chimney drain and side drains to the stream channel located at the base, or toe, of the fill.

33.     The Southeast Ridge No. 1 Surface Mine operated in high selenium seams such as Cedar Grove and Alma (a name formerly used, now incorporated into the Powellton seam by the West Virginia Geologic and Economic Survey).  The West Virginia Geologic and Economic Survey associate these seams with high concentrations of selenium.

34.     While the Southeast Ridge Mine was in operation, its discharges into the waters of the United States were regulated by WV/NPDES Permit WV1007963.

35.     WVDEP granted Phase 3 bond release for SMA Permit S501689 on or about December 11, 2006. All coal removal activities have ceased in that permitted area and the mine site has been reclaimed.

36.     On or about April 4, 2007, WVDEP released WV/NPDES Permit WV1007963 – the only Clean Water Act permit authorizing discharges of pollutants from the Southeast Ridge Mine into waters of the United States.

37.     On February 26, 2013, a water sample taken just downstream of the discharge from Durable Rock Fill No. 4 in Bear Fork, where it crosses County Highway 10/02, just above its confluence with the Right Fork of Ben Creek, revealed a selenium concentration in Bear Fork of 6.90 µg/L.

38.     The sampling location coordinates are approximately 37° 34' 44.09" N, 81° 56' 13.60" W.

39.     Durable Rock Fill No. 4 of the Southeast Ridge Mine lies upstream approximately

0.6 miles from the sampling location.

40.     The only potential source of selenium into Bear Fork is Durable Rock Fill No. 4. Accordingly, Plaintiffs allege on information and belief that Durable Rock Fill No. 4 is discharging selenium into Bear Fork.

41.     Durable Rock Fill No. 4 is a point source as that term is used in the context of the CWA.  33 U.S.C. § 1362(14).

42.     Durable Rock Fill No. 4 conveys discharges of groundwater and surface water into Bear Fork at or near its toe.

43.     Bear Fork, in which Durable Rock Fill No. 4 is constructed, is a water of the United States because of its hydrologic connection to Right Fork of Ben Creek, Ben Creek, Tug Fork, and the Big Sandy River.

44.     Ben Creek is listed on the 2010 and Draft 2012 303(d) lists as impaired for selenium.

45.     Selenium is a toxic pollutant under the CWA. 40 C.F.R. § 401.15.

46.     Neither Defendant nor any other entity possesses a permit to discharge selenium from Durable Rock Fill No. 4 into Bear Fork.

47.     In light of the nature of selenium discharges from surface mines and in the absence of any evidence that Defendant or any other party has made any efforts to prevent future similar selenium-laden discharges from Durable Rock Fill No. 4, Plaintiffs allege that Defendant has committed additional unpermitted discharges since February 26, 2013 and is in continuing and ongoing violation of the Clean Water Act.

48.     Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on March 18, 2013, to Defendant, notifying it that its unpermitted discharges of selenium violate the Clean

Water Act.

49.     The NOI also notified Defendant of Plaintiffs' intent to sue Defendant for those violations at the end of the 60-day period required by statute.

50.     The NOI was sent by certified mail, return receipt requested, to the following persons: Defendants; Secretary Randy Huffman, WVDEP; Shawn M. Garvin, Regional Administrator of EPA Region III; and Bob Perciasepe, Acting Administrator of EPA.

### CLAIM FOR RELIEF

51.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 50 supra.

52.     Defendant's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit. 33 U.S.C. § 1311.

53.     Defendant does not hold any WV/NPDES Permits that authorize the discharge of selenium from Durable Rock Fill No. 4.

54.     Under Section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), the prohibition against unpermitted discharges under Section 301 is an "effluent standard or limitation" subject to enforcement through the citizen suit provision at Section 505(a)(1) of the Act.  33 U.S.C. § 1365(a)(1).

55.     As established by Plaintiffs' sampling, Defendant discharged selenium into the waters of Bear Fork of Ben Creek of Tug Fork in violation of Section 301(a) in February 2013.

56.     On information and belief, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of the Clean Water Act as a result of its ongoing selenium discharges

because Defendant has taken no meaningful action to eradicate the underlying cause of the discharges or to obtain a permit for the discharges.

57.     Because of its unpermitted discharges, Pocahontas is in violation of the prohibition in the Clean Water Act on discharges of pollutants without a permit. 33 U.S.C § 1311. This prohibition is enforceable pursuant to Sections 505(a)(1) and 505(f)(1) of the CWA, 33 U.S.C. §§ 1365(a)(1), 1365(f)(1).

58.     Unless enjoined, Defendants will remain in continuing or intermittent violation of the Clean Water Act.

59.     Pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d) and 1365, Pocahontas is liable for civil penalties of up to $37,500 per day for its unpermitted discharges.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

60.     Declaring that Defendant has violated and is in continuing violation of the CWA;

61.     Enjoining Defendant from allowing further unpermitted discharges of selenium;

62.     Ordering Defendants to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

63.     Ordering Defendant to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

64.     Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

65.    Granting other such relief as the Court deems just and proper.

Respectfully submitted,

/s/ J. Michael Becher

J. Michael Becher (W.Va. Bar No. 10588)
Amy Vernon-Jones (W. Va. Bar No. 12027)
Joseph M. Lovett (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9002

Counsel for Plaintiffs